UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DONIELLE H.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:18-cv-02990-JPH-TAB |
| | ) |
| NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration,[2] | ) ) ) |
| | ) |
| Defendant. | ) |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] In March 2018, the U.S. Government Accountability Office (GAO) informed the President of its determination that Nancy Berryhill had exceeded the time limit under the Federal Vacancies Reform Act of 1998 (FVRA) allowing her to serve as the Acting Commissioner of the Social Security Administration without the nomination of a successor. *Patterson v. Berryhill*, No. 2:18-cv-193, (W.D. Pa. June 14, 2018) https://www.leagle.com/decision/infdco20180615f26 (last visited Mar. 26, 2019). Accordingly, Ms. Berryhill stepped down as Acting Commissioner and continued to lead the agency from her Deputy Commissioner for Operations title of record. *Id.* However, she has resumed her role as Acting Commissioner after the President's nomination of a potential successor. *Id.*; *see* 5 U.S.C. § 3346(a)(2) (providing that, once a first or second nomination for the office is submitted to the Senate, an acting officer may serve from the date of such nomination for the period the nomination is pending in the Senate); *see also* Daily Digest of the Senate, https://www.congress.gov/congressional-record/2019/1/16/daily-digest (last visited Mar. 26, 2019) (showing the re-nomination of Andrew Saul on January 16, 2019 as the Commissioner of Social Security). The case caption has been updated to reflect Ms. Berryhill's current official title.

Plaintiff Donielle H. (the "Plaintiff") seeks judicial review of the Social Security Administration's decision denying her petition for certain benefits. For the reasons that follow, the decision is AFFIRMED.

The Plaintiff applied for disability insurance benefits ("DIB") from the Social Security Administration ("SSA") on August 18, 2014, alleging an onset date of August 14, 2013. [Dkt. 8-2 at 12.] Her application was initially denied on October 7, 2014, [Dkt. 8-4 at 2], and again upon reconsideration on November 26, 2014, [Dkt. 8-4 at 6]. Administrative Law Judge Belinda J. Brown (the "ALJ") conducted a hearing on August 30, 2016, [Dkt. 8-2 at 65–87], and a supplemental hearing on June 20, 2017, [Dkt. 8-2 at 90–100]. The ALJ issued a decision on July 19, 2017, concluding that the Plaintiff was not entitled to receive DIB. [Dkt. 8-2 at 8.] The Appeals Council denied review on August 3, 2018. [Dkt. 8-2 at 2.] On September 28, 2018, the Plaintiff timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g). [Dkt. 1.]

# I.
### STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits … to individuals with disabilities." *Barnhart v. Walton,* 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected

to last … not less than 12 months." *Id.* at 217. "The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue,* 364 F. App'x 271, 274 (7th Cir. 2010). "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Id.* at 274.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart,* 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue,* 539 F.3d 668, 678 (7th Cir. 2008), this Court must accord the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart,* 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

# II.
# BACKGROUND

The Plaintiff was 30 years of age at the time she applied for DIB. [Dkt. 8-5 at 2.] She has completed three years of college. [Dkt. 8-6 at 6.] She has worked in retail, food service, and medical recordkeeping. [Dkt. 8-6 at 6; Dkt. 8-2 at 21.][3]

The ALJ followed the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that the Plaintiff was not disabled. [Dkt. 8-2 at 22.] Specifically, the ALJ found as follows:

- At Step One, the Plaintiff had not engaged in substantial gainful activity[4] since August 14, 2013, the alleged onset date. [Dkt. 8-2 at 14.]

- At Step Two, she had "the following severe impairments: major depressive disorder with psychotic features and obesity." [Dkt. 8-2 at 14 (internal citation omitted).]

- At Step Three, she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Dkt. 8-2 at 15.]

- After Step Three but before Step Four, she had the RFC "to perform less than the full range of medium work as defined in 20 CFR 404.1567(c) except lifting/carrying 50 pounds occasionally and 25 pounds frequently; sitting for six hours, standing for six hours, walking for six hours; push/pull as much as lift/carry; occasionally climb ladders, ropes or scaffolds; occasional unprotected heights; limited to simple, routine and repetitive tasks but not at a production rate pace (e.g. assembly line work);

---

[3] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

5

limited to simple work-related decision[s]; occasional interaction with supervisors, co-workers and the public." [Dkt. 8-2 at 17.]

- At Step Four, she was unable to perform any of her past relevant work as a medical records clerk or short order cook. [Dkt. 8-2 at 21.]

- At Step Five, relying on the testimony of the vocational expert ("VE") and considering the Plaintiff's age, education, and RFC, there were jobs that existed in significant numbers in the national economy that she could have performed through the date of the decision, including representative occupations as a counter supply worker, industrial cleaner, and lab equipment cleaner. [Dkt. 8-2 at 21–22.]

# III.
## DISCUSSION

The Plaintiff contends that the ALJ erred when she failed to: (1) address the Plaintiff's ability to sustain work while attending necessary treatment visits; and (2) consider the Plaintiff's degenerative disc disease and carpal tunnel syndrome after finding those impairments to not be severe at Step Two. The Court addresses each argument in turn.

**A. Ability to Sustain Work and Necessary Treatment**

The Plaintiff argues that the ALJ ignored a line of evidence by failing to address the Plaintiff's need to attend treatment visits. [Dkt. 10 at 19–20.] The Plaintiff contends that necessary treatment occurring two to three times per month, including individual therapy sessions, lasting 45-50 minutes each, and medication management visits with a psychiatrist, lasting fifteen minutes each, would preclude her ability to sustain work in the competitive workforce. [Dkt. 10 at 19–21.]

The Court does not find the evidence presented sufficient to trigger any duty by the ALJ to address the Plaintiff's ability to sustain work while receiving

6

necessary treatment. The ALJ does not need to discuss every piece of evidence in the record. *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). However, the SSA provides guidance as to what must be considered and articulated, including:

> In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

Social Security Ruling ("SSR") 96-8p (S.S.A. July 2, 1996), 1996 WL 374184, at *7. This district has explained:

> While the ruling makes clear that the adjudicator must consider the ability to sustain an "equivalent work schedule" in assessing an RFC, the Court finds it only necessary for an ALJ to explain how he or she reached a conclusion that full-time work could be maintained if the case record establishes "material inconsistencies or ambiguities" with the relevant evidence.

*Gary B. v. Berryhill*, No. 1:18-cv-00833-JMS-TAB, 2018 WL 4907495, at *3 (S.D. Ind. Oct. 10, 2018) (collecting cases). "As a practical matter, the Court finds that it would be a needless formality to require that the ALJ articulate in every decision how he or she concluded that necessary treatment visits could be attended while maintaining a full-time work schedule." *Id.* The decisional authority of the Seventh Circuit and the districts within it persuasively establish that:

> Taken together, an ALJ may be obligated to address a claimant's ability to sustain work, if the claimant presents sufficient evidence demonstrating that the ability would be precluded by treatment

7

> visits which are necessitated by the claimant's impairments. Necessary visits may preclude sustaining work if they are too frequent or otherwise cannot be scheduled around a full-time competitive work schedule, including if those visits regularly occur on an emergency or otherwise unpredictable basis.

*Id.* at *4.

Here, the ALJ called a medical expert, forensic psychologist Don A. Olive, Ph.D., to testify during the supplemental hearing. [Dkt. 8-10 at 79.] Dr. Olive testified that appointments at least two to three times a month for individual therapy and medication management would be a reasonable treatment plan for the Plaintiff's mental health impairments. [Dkt. 8-2 at 95.] The VE testified that needing an additional two-hour break, beyond normal breaks, two times a month would preclude competitive work in the national economy. [Dkt. 8-2 at 99.]

However, the Plaintiff did not present any evidence that the necessary treatment needed to occur during working hours or could not have been scheduled around a full-time work schedule. There is no evidence that the treatment was needed on an emergency or unpredictable basis. The treatment visits do not take very long, once a month for fifteen minutes and twice a month for less than an hour. An equivalent full-time work schedule does not have to be 9:00 a.m. – 5:00 p.m., Monday through Friday, and even if that were the schedule there is no evidence that the providers could not schedule evening or weekend appointments around employment. The frequency of visits does not appear prohibitive of being scheduled around employment either. Furthermore, the evidence presented by the Plaintiff does not substantiate that she attended therapy as often as twice a month. *See* [Dkt. 10-1 (treatment log listing 29

8

therapy visits in 36 months between April 4, 2014 and April 6, 2017).] The evidence presented was not inconsistent with the demands of competitive employment.

The Plaintiff did submit supportive medical opinions from treating providers that the Plaintiff would be likely to be absent from work more than four days per month because of her impairments or treatment. [Dkt. 8-10 at 7; Dkt. 8-10 at 98.] However, the ALJ addressed the opinions and offered substantial reasons for giving them "little" or "no weight." [Dkt. 8-2 at 19–20.] The Plaintiff has not provided any argument that the ALJ erred in weighing the opinion evidence. The Court agrees with the Commissioner that any challenge to the opinion evidence has not been developed by the Plaintiff. [Dkt. 11 at 9.] An argument that is "perfunctory and undeveloped," may be treated as waived. *Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018), *reh'g denied* (Dec. 18, 2018) (quoting *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016)). The Plaintiff did not reply to the Commissioner's waiver argument. The Court finds any challenge to the opinion evidence to be waived. Accordingly, the Court does not find any basis to remand for further explanation by the ALJ as to how she concluded the Plaintiff could have maintained employment while receiving rather routine treatment for her mental health impairments.

**B. Back Impairment and Carpal Tunnel Syndrome**

The Plaintiff next argues that the ALJ's conclusion that the Plaintiff's degenerative disc disease and carpal tunnel syndrome were not severe impairments is not supported by substantial evidence. [Dkt. 10 at 22.] The

Plaintiff contends that the ALJ did not address contrary evidence and played doctor in reaching her Step Two conclusions. [Dkt. 10 at 24.] She further contends that reversable error resulted from the Step Two determination because the ALJ did not consider the impairments and minimally articulate her findings at the later steps of the sequential evaluation process. [Dkt. 10 at 22–28.]

As an initial matter, the record does not establish that Plaintiff's alleged carpal tunnel syndrome was a medically determinable impairment. "An individual's symptoms, […] will not be found to affect the ability to perform work-related activities for an adult […] unless medical signs or laboratory findings show a medically determinable impairment is present." SSR 16-3p (S.S.A Oct. 25, 2017), 2017 WL 5180304, at *3.

At Step Two, the ALJ explained that statements alone—absent medical evidence supporting functional limitations—cannot establish an impairment. [Dkt. 8-2 at 15.] The ALJ explained that an electromyogram had found no evidence of carpal tunnel syndrome. [Dkt. 8-2 at 15.] She also explained that an MRI had not revealed any cervical etiology to explain the Plaintiff's hand symptoms. [Dkt. 8-2 at 15.] The ALJ noted that an examination in July 2016 had revealed normal fine motor abilities and sensation. [Dkt. 8-2 at 15.] She also noted that the consultative examination in October 2016 had revealed decreased grip strength in the left hand, but that the Plaintiff's ability to make a fist and button clothing was preserved in both hands. [Dkt. 8-2 at 15.] On August 12, 2016, an examination by a specialist indicated some signs of tenderness and decreased sensation, but the diagnoses were "possible left carpal

tunnel syndrome" and "possible cervical radiculopathy." [Dkt. 8-10 at 10.] The specialist also noted that the Plaintiff "does not have signs of carpal tunnel syndrome on the nerve conduction study, but she may have carpal tunnel syndrome that may not have been detected." [Dkt. 8-10 at 10.] After additional testing and treatment, on September 23, 2016, the specialist's diagnosis was continued left hand numbness and pain with "no clear etiology." [Dkt. 8-10 at 43.] The record did not definitively establish any medically determinable impairment causing the Plaintiff's hand symptoms to warrant any further consideration beyond Step Two.

Furthermore, the ALJ did not ignore the lines of evidence related to either the Plaintiff's hand symptoms or her back pain. At Step Two, the ALJ discussed the evidence of a back injury, as well as objective imaging of the Plaintiff's lumbar spine revealing a disc protrusion at L4-5. [Dkt. 8-2 at 14–15 (citing Dkt. 8-8 at 103 (MRI taken October 28, 2014, showing some impingement of the left L5 nerve root caused by the protrusion)).] The ALJ acknowledged the indications in the record of lumbar impairment (positive straight leg raising tests and decreased range of motion) but concluded that "these are subjective findings and dependent on claimant effort." [Dkt. 8-2 at 15.]

Although the MRI objectively established a medically determinable impairment, the ALJ's decision may fairly be read to imply that there is no objective evidence of a back impairment. *See* [Dkt. 8-2 at 15.] But the ALJ did not rest solely on her own lay determination or play doctor in concluding that the impairment was not severe. "An impairment or combination of impairments

11

is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a). The ALJ noted that the opinions of the state agency consultants "essentially support the conclusions stated herein." [Dkt. 8-2 at 20.] The state agency consultants reviewed a portion of the record at the initial and reconsideration stages and concluded that the Plaintiff's back impairment was not severe. [Dkt. 8-3 at 5; Dkt. 8-3 at 14–15.]

The Court does not find any error at Step Two because the ALJ continued to consider the physical impairments at the later steps of the sequential evaluation. "As long as the ALJ determines that the claimant has one severe impairment, the ALJ will proceed to the remaining steps of the evaluation process." *Castile v. Astrue,* 617 F.3d 923, 926–27 (7th Cir. 2010) (citing 20 C.F.R. § 404.1523; *see Golembiewski v. Barnhart,* 322 F.3d 912, 918 (7th Cir. 2003) ("Having found that one or more of [appellant's] impairments was 'severe,' the ALJ needed to consider the *aggregate* effect of the entire constellation of ailments—including those impairments that in isolation are not severe.")). "Therefore, the step two determination of severity is 'merely a threshold requirement.'" *Castile,* 617 F.3d at 927 (quoting *Hickman v. Apfel,* 187 F.3d 683, 688 (7th Cir. 1999)).

At Step Three, the ALJ referenced consideration of the musculoskeletal listings in combination with the Plaintiff's obesity. [Dkt. 8-2 at 15.] Despite the absence of any severe physical impairment besides obesity, the ALJ assessed an RFC for a range of medium work with exertional and postural limitations as described above. The ALJ explained that the postural limitations were added to

accommodate the Plaintiff's obesity. [Dkt. 8-2 at 17–18.] The Court infers that the ALJ assessed exertional limitations in consideration of the Plaintiff's non-severe impairments, including her lumbar spine degeneration.

The ALJ also detailed the relevant evidence related to the Plaintiff's back pain and hand symptoms when she weighed the opinion evidence and discussed the factors used to evaluate the Plaintiff's subjective symptoms. *See* [Dkt. 8-2 at 19–21.]

By not raising any argument that the ALJ's assessment was patently wrong, the Plaintiff waived any challenge to the ALJ's subjective symptom evaluation. Even if the issue were before the Court for consideration, the ALJ provided substantial reasons to support an adverse credibility evaluation. The ALJ noted that the Plaintiff had been looking for work and found a job in October 2014 but was let go after a criminal history check. [Dkt. 8-2 at 18 (citing Dkt. 8-8 at 85 ("Barriers to Employment" include the "biggest barrier is her criminal history," a felony count of fraud that cannot be expunged without payment of past-due court fees, a non-accredited college degree, financial inability to pursue further education with student loan debt, anxiety, and restricted hours she can work because she does not have childcare.)).]

Regarding the Plaintiff's back impairment, the ALJ noted that she only complained of back pain on one occasion to a treating provider that supported her claim on that basis. [Dkt. 8-2 at 19.] Inconsistencies with the severity of symptoms reported at the hearing and those reported while seeking treatment or the failure to regularly seek treatment for those symptoms can support an

13

ALJ's credibility finding. See *Sienkiewicz v. Barnhart*, 409 F.3d 798, 803–04 (7th Cir. 2005).

The ALJ also noted that the Plaintiff stopped physical therapy for her neck and arm after reporting a reduction in pain. [Dkt. 8-2 at 21 (citing Dkt. 8-10 at 45 (Discharge Summary indicates that at the last session on November 4, 2016, the Plaintiff reported "that she has had maybe 1 instance of pain over the past 2 weeks and it lasted for a couple of minutes rated 1-2/10.")).] Accordingly, the Court does not find that the ALJ failed to consider the Plaintiff's back impairment and hand symptoms beyond Step Two. Remand is not appropriate for further consideration of the Plaintiff's physical impairments at any step of the sequential evaluation process.

## IV.
### CONCLUSION

The Court concludes that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. As there is no legal basis to reverse the ALJ's decision that the Plaintiff was not disabled during the relevant time period, the decision below is **AFFIRMED**. Final judgment will issue accordingly.

**SO ORDERED.**

Date: 4/15/2019

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov

Kirsten Elaine Wold
HANKEY LAW OFFICE
kew@hankeylaw.com